CUAUHTEMOC ORTEGA (Bar No. 257443)
Interim Federal Public Defender
NATALIE COHEN (Bar No. 322606)
(E-Mail:  Natalie_Cohen@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-2854
Facsimile:  (213) 894-0081
Attorneys for Defendant
JEFFREY DEVORE

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 05-0202-JSL-PSG |
| Plaintiff, | **OPPOSED MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. § 583(e)(1); EXHIBITS** |
| v. | **Hearing Date: September 21, 2020** |
| JEFFREY DEVORE, | **Hearing Time: 10:00 a.m.** |
| Defendant. | |

Defendant Jeffrey DeVore, by and through his attorney of record, Natalie Cohen, hereby moves for early termination of his supervised release pursuant to 18 U.S.C. § 3583(e)(1). This motion is based on the attached memorandum of points and authorities, declaration, exhibits, and all records in this case.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Interim Federal Public Defender

DATED:  August 14, 2020      By  */s/ Natalie Cohen*

NATALIE COHEN
Deputy Federal Public Defender
Attorneys for Defendant JEFFREY DEVORE

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ................................................................................. 1

II.   ARGUMENT ........................................................................................ 3

      A.    Mr. DeVore has been on supervision for over a decade, and
            this Court has broad discretion to terminate supervised release
            on the basis of his conduct and in the interest of justice ............................ 3

      B.    The relevant factors counsel in favor of early termination
            in this case. ........................................................................................ 6

III.  CONCLUSION ................................................................................... 11

TABLE OF AUTHORITIES

PAGE(S)

**Federal Cases**

*Johnson v. United States*,
    529 U.S. 694 (2000)..........................................................................7

*United States v. Cunningham*,
    2014 WL 3002207 (S.D. Cal. July 1, 2014) ...............................6, 8, 9, 10

*United States v. Emmett*,
    749 F.3d 817 (9th Cir. 2014) ............................................................3

*United States v. Henry*,
    2020 WL 4281966 (S.D. Cal. June 23, 2020) ......................................4

*United States v. Johnson*,
    529 U.S. 53 (2000).........................................................................2

*United States v. Mauldin*,
    2020 WL 2840055 (D.D.C. June 1, 2020) ..........................................4

*United States v. McGovern*,
    438 F. Supp. 3d 136 (D.P.R. 2020) ...................................................4

*United States v. Miqbel*,
    444 F.3d 1173 (9th Cir. 2006) .........................................................7

*United States v. Raymond*,
    2019 WL 1858285 (D.D.C. Apr. 25, 2019)........................................3

**Federal Statutes**

18 U.S.C. § 2252......................................................................................1

18 U.S.C. § 3553...................................................................................3, 7

18 U.S.C. § 3583............................................................................1, 3, 7, 11

**Miscellaneous**

Arkansas, Arizona, Delaware, Illinois, Iowa, New Mexico, and South
    Carolina. JUSTICE RESEARCH AND STATISTICS ASSOCIATION, IMPROVING
    THE STATE OF CRIMINAL HISTORY RECORDS: RECIDIVISM OF SEX
    OFFENDERS RELEASED IN 2001 ..........................................................4, 5, 6

## TABLE OF AUTHORITIES

PAGE(S)

http://news.legislature.ne.gov/dist20/files/2013/08/NE_sex_offender_recid
 ivism.pdf ....................................................................................................................4

https://www.prisonervisitation.org/ ............................................................................5

R. Karl Hanson, et al., *High-Risk Sex Offenders May Not be High Risk
 Forever* ......................................................................................................................5

iii

# I.   INTRODUCTION

Fifteen years ago, Jeffrey Wolden DeVore accepted responsibility for his conduct and pleaded guilty to one count of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Dkt. No. 20, Minutes of Change of Plea. On April 24, 2006, Mr. DeVore was sentenced to the mandatory minimum sentence of 60 months imprisonment, and a lifetime term of supervised release. Dkt. No. 40, Judgment and Commitment Order. At the sentencing hearing, the late Judge Letts stated:

> I would expect the Order to reflect that it is not my desire that Mr. DeVore be kept on lifetime supervision, or my expectation. I don't think that's going to happen… It's better to have somebody at some future time, which would be during the period of supervised release at some future time, say, 'Yeah, this guy is not a problem. Why keep him on supervised release? It's a burden for us; it's        a burden for him. And it's not doing anybody any good.' They ask for early release all the time so…  I would not expect that it would go on forever, or even that it would go longer than an ordinary period of supervised release.

*See* Reporter's Transcript of Proceedings, at pp. 5-6, Apr. 24, 2006.[1]

The minimum term of supervised release for this case was five years. 18 U.S.C. § 3583(k). Mr. DeVore has served more than twice that, and has only had one informal hearing before the Court, seven years ago. No formal action was taken. Exhibit B at 3, July 20, 2020 Letter to Court Regarding Proposed Modification of Conditions. As evidenced by the United States Probation Office's recent request, and its previous letter dated October 10, 2019, it opposes Mr. DeVore's request for early termination of supervision. *Id.* at 2. However, it is worth noting that the United States Probation Office is precluded from recommending early termination for any sex offender, pursuant to the

---

[1] A true and correct copy of the Reporter's Transcript of Proceedings, dated April 24, 2006, is attached hereto as Exhibit A.

1

Early Termination Guidelines adopted by the Judicial Conference in the Guide to Judiciary Policy, Vol. 8, Part E, Sec. 380.10.

Mr. DeVore is almost 70 years old. Although he is retired, he is very involved in his community: he serves on the executive committee of his local Toastmasters[2] chapter, regularly attends services and volunteers at his church, and maintains an active and healthy social life with other adults. Mr. DeVore is open with others about his past, but has earned trust and acceptance through his genuine remorse and insight. This is evidenced by the many letters written on his behalf by friends and family. Exhibit C, Support Letters.

"Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Mr. DeVore has made a positive, productive life for himself since 2009, but the conditions of his supervised release have become increasingly burdensome. He has been denied opportunities to officiate wedding and funeral services, and to take on chiropractic consulting work due to the terms of his supervision. These terms also make it difficult to travel to visit family, and to form new relationships with adults or enter new social settings. Mr. DeVore has also lived with multiple sclerosis (MS) for over twenty years, and cervical osteoarthritis since 2012. He is increasingly fatigued and unsteady on his feet.

The "future time" that the Honorable Judge Letts spoke of is now. After eleven years of treatment, self-reflection, and compliance, early termination is the just and appropriate result in this case.

---

[2] Toastmasters International is a nonprofit educational organization that operates clubs worldwide for the purpose of promoting communication, public speaking and leadership. Mr. DeVore has been a member for six years.

## II.   ARGUMENT

**A.   Mr. DeVore has been on supervision for over a decade, and this Court has broad discretion to terminate supervised release on the basis of his conduct and in the interest of justice.**

After a defendant has served at least one year on supervised release, the Court may terminate supervised release if, after considering the factors set forth in section 18 U.S.C. § 3553(a), "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]" 18 U.S.C. § 3583(e)(1). This language "gives district courts broad discretion in determining whether to grant a motion to terminate supervised release." *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014). "The expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." *Id*. The Court must explain its decision for granting or denying a motion for early termination sufficiently, to allow for meaningful appellate review and to promote the perception of fairness. *Id.* at 820-22.

The question before this Court "is not whether the defendant should be punished further, but rather whether his ... supervision ... should remain in place in order to ensure that his life continues to stay moving in the right direction." *United States v. Raymond*, No. CR 09-183 (RMC), 2019 WL 1858285, at *2 (D.D.C. Apr. 25, 2019) (quoting *United States v. Harris*, 258 F. Supp. 3d 137, 146 (D.D.C. 2017)). In *Raymond*, the Court granted an opposed motion for early termination about halfway through a 10-year term of supervision for a defendant convicted of distributing child pornography in violation of the same statute at issue here. The defendant in *Raymond* complied with all the conditions of his supervision and was an active participant in his own treatment. *Id*. at *2.

Although a life-term of supervision was imposed here, that does not preclude this Court from granting relief. "[T]he fact that a lifetime of supervised release was imposed

3

at the time of sentencing does not necessarily disqualify a defendant from early termination  of supervised release." *United States v. Henry*, No. 11CR7032-H, 2020 WL 4281966, at *3 (S.D. Cal. June 23, 2020). In fact, courts have granted motions for early termination to defendants servicing lifetime supervision for child pornography offenses. *United States v. Mauldin*, No. CR 18-371 (BAH), 2020 WL 2840055 (D.D.C. June 1, 2020) (granting early termination of supervision to defendant who served 10 years of a lifetime term of supervision for possession of child pornography, due to his compliance and burdensome medical issues.); *United States v. McGovern*, 438 F. Supp. 3d 136, 143 (D.P.R. 2020) (granting defendant's opposed motion for a reduction from lifetime supervision to five years of supervised release for possession of child pornography.)

A popular myth that has led to the imposition of lifetime supervised release for sex offenders in many cases is that sex offenders have high rates of recidivism and therefore remain a threat to public safety. In fact, "[r]esearch on sex offender recidivism produces mixed results, but generally finds that sex offenders are no more likely than their non-sex offending counterparts to reoffend with a sex crime over another type of crime. CONSORTIUM FOR CRIME AND JUSTICE RESEARCH, NEBRASKA SEX OFFENDER REGISTRY STUDY 6.[3]

One study published in 2009 found three year recidivism rates for sex offenders of 2.3%-4.0% in Arkansas, Arizona, Delaware, Illinois, Iowa, New Mexico, and South Carolina. JUSTICE RESEARCH AND STATISTICS ASSOCIATION, IMPROVING THE STATE OF CRIMINAL HISTORY RECORDS: RECIDIVISM OF SEX OFFENDERS RELEASED IN 2001, at 17. In a 2013 study of aggregated data pulled from 21 studies from New Zealand, Denmark, Canada, the United Kingdom, Germany, Sweden, and the United States, researchers found that the risk of recidivism for sex crimes substantially decreases over

---

[3]http://news.legislature.ne.gov/dist20/files/2013/08/NE_sex_offender_recidivism.pdf.

time. The study found that "on average… recidivism risk was cut in half for each 5 years that [an offender] remained offence-free in the community." R. Karl Hanson, et al., *High-Risk Sex Offenders May Not be High Risk Forever*, JOURNAL OF INTERPERSONAL VIOLENCE 9 (November 3, 2013).

Although the United States Probation Office noted concerns with Mr. DeVore's conduct in the July 20, 2020 letter, many of these claims are either historical or vague overstatements. On April 18, 2013, Mr. DeVore was cited into court for questionable images found on his electronic devices. At the time, the Court did not see fit to take formal action. Exh. B at 3. In October 2016, although no contraband was found, some borderline images were viewed. In April 2019, a questionable image was viewed. These incidents were addressed in counseling. *Id.*

The other more recent incidents cited are speculative in nature. Mr. DeVore attended a Korean Day Spa with friends, and no children were present. Mr. DeVore's friend had assured him that children would not be present. Still, he followed his probation officer's admonishment and has not visited one since. *Id.* at 4. Mr. DeVore watched a film that ended up containing a brief nude scene with male teenagers. He disclosed this to his probation officer. Mr. DeVore also disclosed that, while speaking at a Toastmasters meeting, he acknowledged the daughter of a fellow member. The remark was not inappropriate or suggestive in any way.

Mr. DeVore is committed to building healthy relationships with fellow adults, and to continuing with counseling and self-improvement. As a prisoner visitation and support volunteer[4], Joseph Bautista first met Mr. DeVore when he was incarcerated at Metropolitan Detention Center. For the past fifteen years, their friendship has continued to grow. Joseph believes Mr. DeVore "has grown as a human being since his arrest and those things he used to keep bottled up inside - his sexuality and more specifically, his

---

[4] https://www.prisonervisitation.org/

5

homosexuality - have now found ways to express themselves in his writing, his speaking, and his relationships with other men." Exh. C, Support Letters at 1.

Joseph has a son, J., that Mr. DeVore has been around numerous times, and Joseph "has never once worried" that he would act inappropriately towards his son. *Id.* at 2. Although the Probation Office's since withdrawn modification request was "not intended to limit his ability to connect with friends who have minor children but [was] designed to eliminate him from interacting with any minor," this is a distinction without difference. Exhibit B at 4. This modification would have prevented him from maintaining these important friendships, and further alienated him from society. *See United States v. Cunningham*, No. 05CR2137-LAB, 2014 WL 3002207, at *2 (S.D. Cal. July 1, 2014) (Burns, J.) (Granting a defendant's opposed motion for early termination of supervised release and further noting that "[a]t some point, once justice has been served, the system must take care to avoid erecting roadblocks that might prevent an offender from reintegrating into society and becoming a productive and useful citizen again.") Mr. DeVore's conduct and the interest of justice warrant early termination.

**B.    The relevant factors counsel in favor of early termination in this case.**

The Court must consider the following statutory factors in deciding whether to terminate Mr. DeVore's supervision early:

- the nature and circumstances of the offense and the history and characteristics of the defendant;

- the need for the sentence imposed to afford adequate deterrence to criminal conduct;

- the need for the sentence imposed to protect the public from further crimes of the defendant;

- the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

6

- the applicable Sentencing Guidelines;
- any pertinent policy statement issued by the Sentencing Commission;
- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
- the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a); *see also* 18 U.S.C. § 3583(e)(1).[5]

The nature and circumstances of this offense are inarguably serious. However, Mr. DeVore served five years in custody, and eleven years of supervised release. These substantial lengths of incarceration and intensive supervision reflect the seriousness of his offense, and have provided more than adequate deterrence to further criminal conduct.

Ultimately, the general focus of supervised release is forward looking, focused on rehabilitation and deterrence. "The congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition from the prison to liberty." *Johnson v. United States*, 529 U.S. 694, 708-09 (2000). Mr. DeVore has successfully made that transition over the past eleven years, and his friends and family can personally attest to that.

Vicky DeVore, Mr. DeVore's ex-wife, has "communicated with and seen him many times since his release." She believes "that he has worked hard to become rehabilitated through group and individual counseling," and that his understanding of the gravity of his crime, the deterrence of prison, and the pain he already caused their children will prevent him from reoffending. Exh. C, Support Letters at 3.

Mr. DeVore remains close with Suzanne Schafer, his ex-sister-in-law, even after his divorce and separation. Suzanne has seen that, from the time she met him 46 years

---

[5] Notably, the Court cannot consider the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. *See United States v. Miqbel*, 444 F.3d 1173, 1181-82 (9th Cir. 2006).

7

ago until now, helping others is "the central theme of his life." Mr. DeVore regularly assists with the care of his ex-mother-in-law, who is 88 and was recently diagnosed with dementia. She specifically chose Mr. DeVore to be her local contact for her assisted living facility, and to be listed on her health care directive, "because she trusts him so much to take care of her needs and look out for her interests." Exh. C, Support Letters at 5.

Benjamin DeVore, Mr. DeVore's son, also supports his request for early termination of supervised release. Benjamin sees his father "has confronted his demons and has worked hard to overcome them. Beyond these changes and commitments to growth, he has striven to reintegrate into society, find meaningful work, and give back to others." Exh. C, Support Letters at 8. Recently, Benjamin had to deal with the terms of Mr. DeVore's supervised release in a very personal way. He was married in Virginia on July 20, 2019, and although Mr. DeVore submitted his travel request months ahead of time, he was not approved until 8 days before the wedding. Not knowing whether his father could attend his wedding until days before was "incredibly stressful," especially when he and his wife also wanted Mr. DeVore to play the piano at the ceremony. *Id* at 9. Benjamin writes that after many difficult conversations about his father's crime, Mr. DeVore has shown him over the past 10 years "that he is committed to living a good life and serving his community." *Id*. at 10.

Ken Mulroney and Mr. DeVore met at a life coach convention about ten years ago, and have been good friends ever since. Ken is a retired police officer, and has "registered enough sex offenders, as a police officer, to know which ones need to be kept under the court's thumb and which ones 'got it' and moved on to try and live a normal life." Ken is confident that Mr. DeVore "gets it," and "is trying his best to move on and re-join society as a functioning member, willing to contribute and bring value to one and all." Exh. C, Support Letters at 12. Together, the two men created a program to provide spiritual guidance to the homeless community through a church Mr. DeVore worked with.

Mr. DeVore has volunteered with numerous nonprofit organizations in his community. At APAIT (Asian Pacific Aids Intervention Team), he met Minh Tran, a marriage and family therapist. As a colleague, Minh knew him "to be kind-hearted, intelligent, compassionate, and honest." Now, as a friend, Minh also knows Mr. DeVore to be "a man of incredible courage and optimism in the face of incredibly hard circumstances." Exh. C, Support Letters at 14. "Whether it be feeding the homeless at the shelter or taking a leadership role at a spiritual group," Mr. DeVore "demonstrates the ability to occupy his time in the quest for a fulfilling and meaningful life, even in his 60's." *Id.* at 15.

Clayton Johnson was a licensed and practicing chiropractor like Mr. DeVore for many years, and upon moving to Long Beach in 2004, the two became friends. They resumed their friendship once Mr. DeVore was released from custody, and Clayton believes "he is unequivocally committed to staying out of legal trouble in the future… his behavior has been exemplary since his release from prison, and he holds a great deal of remorse for his actions that put him there." Exh. C, Support Letters at 17. Clayton notes that Mr. DeVore "is very forthcoming about his past to people," and even once asked to see the ID of a 20-year-old who was also at Clayton's house for dinner.

Mr. DeVore has made it a point to disclose his history even when he is not legally obligated to do so. Mr. DeVore is an active leader and participant in Toastmasters, and has spoken openly and honestly about his crime – and his remorse – through his "open and candid speeches." Exh. C, Support Letters at 19. Gisele Nguyen met and befriended Mr. DeVore through Toastmasters four years ago. When she first met him, she "saw and felt deep sadness [and] remorse in his eyes." As the months and years went by, she "[came] to care, appreciate and respect" Mr. DeVore, considers him "a dear friend and colleague" and someone "who deserves to live the rest of his life with dignity, honor, and respect." *Id.* at 20.

Mr. DeVore met also John Christopherson through his involvement with Toastmasters. He first heard of Mr. DeVore's offense from Mr. DeVore directly, and

9

later learned more through speeches to the entire group. John believes that "regular attendance at mental health therapy sessions, his willingness to help others through his volunteering with Toastmasters, and the continuing educational opportunities that he has taken advantage of to help him better understand his past behaviors" demonstrate that he is no longer the same person he was when he committed his offense. Exh. C, Support Letters at 21. John feels that Mr. DeVore "has not only accepted responsibility for his past actions, but now has the tools to ensure that he does not reoffend." *Id.*

For the past four years, Mr. DeVore has been a member of The Table, "a progressive Christian community marked by radical inclusion, holy conversation and service to our community." Greg Ronning is the Pastor of The Table, and writes that Mr. DeVore "has been a great asset to our community. He brings many gifts, an honest open seeking heart, and a desire to use his gifts and passion to serve those in need." Exh. C, Support Letters at 22.

Mr. DeVore is requesting early termination of supervision because it is no longer necessary, and because it is preventing him from living a full normal life. Although Mr. DeVore is grateful for his community and his friendships, the fact of his supervision makes it very difficult to form new personal connections with age appropriate partners and friends. It is one thing to disclose a past sex offense – it is another thing entirely to disclose that you will be on court supervision *for the rest of your life*, and unable to travel without permission or to visit public places without intense vigilance.

It bears repeating that, at the time of sentencing, Judge Letts explicitly stated "that it is not my desire that Mr. DeVore be kept on lifetime supervision, or my expectation." Exhibit A, Transcript at 6. He sentenced Mr. DeVore under the expectation that, at some future time, supervised release would no longer be necessary or just. That time is now.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   CONCLUSION

After over eleven years of supervision, Mr. DeVore has successfully transitioned from incarceration to community life. Because the goals of supervised release have been satisfied, early termination "is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1).

Respectfully submitted,

CUAUHTEMOC ORTEGA
Interim Federal Public Defender

DATED:  August 14, 2020          By  _____

NATALIE COHEN
Deputy Federal Public Defender
Attorney for JEFFREY DEVORE

11