# EXHIBIT A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

- - -

HONORABLE J. SPENCER LETTS, JUDGE PRESIDING

- - -

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| VS. | ) CR NO. 05-202-JSL |
| | ) |
| JEFFREY WOLDEN DEVORE, | ) |
| | ) |
| DEFENDANT. | ) |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

MONDAY, APRIL 24, 2006

SANDRA L. BECERRA, CSR 10024
COURT REPORTER
UNITED STATES COURTHOUSE
312 NORTH SPRING STREET
SUITE 429-K
LOS ANGELES, CALIFORNIA   90012
VerbatimRecord@aol.com

```
 1     APPEARANCES OF COUNSEL:

 2

 3     ON BEHALF OF THE GOVERNMENT:

 4             JENNIFER CORBETT
               ASSISTANT UNITED STATES ATTORNEY
 5                 1200 UNITED STATES COURTHOUSE
                   312 NORTH SPRING STREET
 6                 LOS ANGELES, CALIFORNIA  90012

 7

 8

 9     ON BEHALF OF THE DEFENDANT:

10             ANGEL NAVARRO
               DEPUTY FEDERAL PUBLIC DEFENDER
11             OFFICE OF THE FEDERAL PUBLIC DEFENDER
               321 EAST 2ND STREET
12             LOS ANGELES, CALIFORNIA  90012-4206

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                               INDEX

2    HEARING RE SENTENCING                              4
```
HEARING RE SENTENCING                              4

```
 1        LOS ANGELES, CALIFORNIA; MONDAY, APRIL 24, 2006; 11:10 AM

 2                            - - - -

 3            THE COURT:  Mrs. Webb.

 4            THE CLERK:  Item No. 2, CR 05-202-JSL, United

 5   States of America versus Jeffrey Wolden Devore.

 6            Counsel.

 7            MS. CORBETT:  Good morning, your Honor.  Jennifer

 8   Corbett on behalf of the United States.

 9            THE COURT:  Good morning.

10            MR. NAVARRO:  And good morning, your Honor.  Angel

11   Navarro with Mr. Devore.  He's present in court.

12            THE COURT:  Good morning.

13            I understand that you have not had much time with

14   the government's position.  The government's position, it

15   really only leaves a few things to much doubt here, so I

16   thought I'd give you a pretty strong tentative and see what

17   you think about it.

18            MR. NAVARRO:  Fair enough, your Honor.

19            THE COURT:  Say again.

20            MR. NAVARRO:  Fair enough.

21            THE COURT:  The -- there are two places where I

22   think there may be -- one I'm just going to do because I

23   think it's right and it's to Mr. Devore's benefit.  I think

24   to tell somebody you can't have access to -- you can't have a

25   computer or can't have access to the Internet, in this world
```

1    you should avoid that if you can.  And so even though I

2    wasn't asked specifically for that I'm going to impose the

3    access conditions because Probation Office always has the

4    ability to walk in unannounced and look at things.  So I

5    think that's enough.  If they want to look at it every now

6    and -- you could have your choice but they always have the

7    right to come in.

8           The condition I would have is they'd also have the

9    right to look to see what is in the computer, but I think

10   that's better than saying you can't have one, you can't have

11   access to the Internet at all.  That doesn't make sense to

12   me.  So I think on the assumption that Mr. Devore would think

13   that's preferable, I would do that just on my own initiative.

14          The -- whatever it is -- the plethysmograph, I do

15   agree with the defendant on that.  It doesn't surprise me

16   that other judges have preceded me on that.  I think that it

17   rings -- I could have been talked out of it but I haven't

18   been and I don't think I'm going to be.  It rings to me like

19   another one of those guinea pig experiments.  They don't know

20   what these things -- how they work and they'd like to find

21   out by using prisoners.  And I'm not sure I think that's a

22   good idea and I would not impose that.

23          The last, which is presumably Mr. Devore's most --

24   most desired changes of the -- changes of the ones I've known

25   is the lifetime supervision.  I would impose that but I want

```
 1    to explain why because it's not -- it's not really my
 2    expectation that that's what would happen.
 3              We're dealing in an area where I've said before
 4    there's a paucity of real research into this.  We're dealing
 5    with a lot of dictorum biases and we're dealing with a lot of
 6    reason for fear of certain kinds of things.  And we're not
 7    sure where those things meet very well.  Five years from
 8    today I think we're going to know more about this whole
 9    subject.  Ten years from today I think were are going to know
10    a lot more about it.
11              I would expect the Order to reflect that it is not
12    my desire that Mr. Devore be kept on lifetime supervision, or
13    my expectation.  I don't think that's going to happen.  What
14    I think is at this stage of history, it's a mistake for a
15    judge to predict the future as if there is no problem there.
16    It's better to have somebody at some future time, which would
17    be during the period of supervised release at some future
18    time, say, "Yeah, this guy is not a problem.  Why keep him on
19    supervised release?  It's a burden for us; it's a burden for
20    him.  And it's not doing anybody any good."
21              They ask for early release all the time so -- not
22    all the time, but all the time.  And it seems to me that
23    it's -- in particular with the new administrative problems
24    they are getting as many people out as they can.
25              I don't have experience with the Probation Office
```

```
 1    being unfair or bias with these things.  You do have a
 2    lawyer.  If you thought that they were being unreasonable
 3    about it and he thought so too, you bring it to me whenever
 4    the time comes because as I sit here, I would not expect that
 5    it would go on forever, or even that it would go longer than
 6    an ordinary period of supervised release.  But if I do it for
 7    an ordinary period, I can't increase it, whereas whatever I
 8    do otherwise, I can decrease.  Nobody can argue much.  So I
 9    think it is better to impose it.  With Mr. Navarro having
10    known and the Probation Officer who is assigned to it having
11    known I'm not expecting it to last forever.
12              I think we're going to know more pretty soon.  And
13    I think we're going to have -- you'll have a track record
14    with the people.  You have presented yourself in court very
15    well, you know that.  And I've been I don't want to say on
16    your side any more than anybody else, any other criminal
17    defendants.  I'm sort of on everybody's side, except that I'm
18    not against the government.
19              I'm not looking for anything special about you, and
20    I'm not treating this as special. I think that decision
21    should be made in the future since we would be doing
22    supervised release and all of that for some period.  And if
23    the Probation Officer reasonably said at the end of the
24    probation period, "You know, I don't think this is  going all
25    that well.  I'm worried about this guy," and I believed him
```

1    and thought he was right, I wouldn't want to have to end it

2    at that time, have to have it end.

3           So I don't expect that to happen, but those are --

4    as to the things I know that there are difference of opinion,

5    that's the way I expect to come out and those are the reasons

6    for it.

7           And I don't know really what else there is that was

8    in the government's position that is going to require a lot

9    of thought, but if it does, I'm not adverse to it.

10          MR. NAVARRO:  Your Honor, I think based on your

11   tentative, I agree with you, I think we can proceed today.

12   My concern was with the other issue of the plethysmograph,

13   but since you've made your ruling --

14          THE COURT:  No, I'm easy about that.  That's -- I

15   think it's not -- by the way, that's not a definitive

16   position forever.  It's one that I would have done today and

17   the reason that I would do it today is right now I'm not sure

18   enough about the test itself.  It is -- in my judgment, it is

19   a pretty serious invasion.  That's not a test I'd want to

20   take.  So -- and I don't care what I was charged with, I

21   don't know that I'd want to take the test.  It might be okay

22   if I knew more about the test I'd think it was a good thing

23   to do, but what I know about it, I don't think we -- I think

24   it is probably to some degree a desire to fill exactly the

25   gap that I think is there.  And I love the desire to do that

1    because I think we need to do it.  We need to get better data

2    than what we have about what this phenomenon is.

3             I think Mr. Devore through you is saying,

4    Mr. Navarro, I think he is saying, "I don't want to be the

5    guinea pig.  I'd rather have somebody else do that that's not

6    being coerced to do it."  I think he's entitled to that at

7    this point.

8             But my mind is open about that because one way or

9    the other we really do have to have much better data and a

10   much better understanding about what this is all about, and I

11   don't know, but I don't think nobody else knows either.

12            So the idea that they want to do it strikes me as

13   sound.  I'm not saying forever I wouldn't do it.  I am saying

14   today I would not.

15            So if there's -- you know, I wasn't saying -- all I

16   was saying, Mr. Navarro, with those things known, if you want

17   to go forward, we will.  If you don't want to, we'll still

18   wait.

19            MR. NAVARRO:  May I have a minute, your Honor?

20            THE COURT:  Sure.

21            (Attorney Navarro and Defendant confer.)

22            MR. NAVARRO:  Yes, your Honor, we are ready to

23   proceed today.

24            THE COURT:  Okay.

25            MR. NAVARRO:  Your Honor, one issue, though.

```
 1              THE COURT:  Sure.

 2              MR. NAVARRO:  When my client was brought over

 3    today, he had a little -- he has a little black box with

 4    handcuffs that the marshals can't remove.

 5              THE COURT:  Isn't that lousy?  I'm so sorry.

 6              MR. NAVARRO:  Yes.

 7              THE COURT:  I wish that wasn't.  I'm not blaming

 8    the marshals, you understand that, but I just don't like

 9    that.

10              MR. NAVARRO:  It just happened.  Probably an error

11    from MDC because he is in segregation and --

12              THE COURT:  Well, you know, by tomorrow -- by

13    today, it's sort of okay.  As a matter of policy I still

14    don't do it.  I think unless somebody looks like a bona fide

15    threat to somebody else in the room, which you don't, I don't

16    see any reason why a guy facing the Court from whom he's

17    hoping to get justice ought to be standing there too much --

18    or sitting there too much with a disadvantage.  And I would

19    not have done it, but I guess there's nothing the marshals

20    could have done.  I'm certainly not blaming them.

21              MR. NAVARRO:  We'll proceed today, your Honor.

22              THE COURT:  Okay, then.

23              I'm sorry it's awkward for you, but that's the way

24    things happen.

25              All right.  The things I have considered are the
```

Case 2:05-cr-00202-JSL   Document 63-2   Filed 12/23/20   Page 12 of 21   Page ID #:391

1   Presentence Report.  They are -- and I can recite them if I

2   want to because they are here.  I have nine letters that I've

3   seen.  And they are -- the letters are good and they always

4   do make a difference.

5          And I think the judgment you've made about how to

6   proceed with sentencing does reflect credit on you because I

7   think it does reflect some concern for your own family and I

8   think it's nice.

9          But I have considered all those things.  I

10  considered the government's position and I've considered the

11  defendant's position and both responses.  There are a total

12  of two from both sides.  I've also of course reviewed the

13  Presentence Report.

14         Is there anything else I should have reviewed?

15         MR. NAVARRO:  No, your Honor.

16         MS. CORBETT:  No, your Honor.

17         THE COURT:  Okay.

18         Then, Mr. Devore, did you read the Presentence

19  Report?

20         THE DEFENDANT:  Yes, I did.

21         THE COURT:  Does it have any factual errors?

22         THE DEFENDANT:  No.

23         THE COURT:  Okay.

24         Then I think I've indicated what I'm going to do if

25  anybody wants to talk further about it.  Lawyers first.  They

1    have a right to.

2         If they don't, then, Mr. Devore, the last thing is

3    the right to speak for yourself.  And I want to be clear that

4    you understand it.  It's called the right of allocation.  I'm

5    sure you discussed it.

6         That right isn't a duty, I thought myself.  And

7    then I think somebody that says to himself that he could

8    never find himself standing where you are may be kidding

9    himself.  I mean walk in the other man's shoes and then find

10   out.  So I'd thought about whether I would want somebody to

11   offer it to me at all, and depending on the circumstances I

12   think I would probably not because then I'd feel -- I'd feel

13   there is something I ought to say.  Who should I say I am

14   sorry to?  Am I supposed to say that to you?  You'll never

15   see me again, whatever.  And I wouldn't know what to say, and

16   I wouldn't know how to say it.  So in some sense I wished

17   that nobody would put that burden on me.  Conversely, there

18   are other circumstances where there is something you want to

19   say.  That's why the right is there.   It's the last thing

20   that happens before somebody gets sentenced so that he can

21   say whatever is in his mind without having it affect the

22   sentence, or to get it off his chest.

23        I'll tell you in advance there is nothing you could

24   say that would hurt you.  You could scream at me.  You could

25   tell me that Mr. Navarro is a -- whatever four letter word

1    you want, or you could say the prosecutor was a -- I've had

2    people tried that's how I know.  I've heard some incredible

3    things during the exercise of the right.

4         And I don't know that people all feel the same way

5    that I do but I think it's got to be tough enough to be

6    standing there at the point of sentencing.  If you're angry

7    and somebody gives you the right to express it, I don't know

8    you should be blamed for doing it.  I don't think I ever

9    would.

10        So if there is anything you want to say, you should

11   say it.  If you'd rather just go ahead with the sentencing,

12   that's fine too.

13        THE DEFENDANT:  I am aware of the affects of what I

14   have done have had on the lives of many people, and I'm also

15   aware of the -- what I consider to be the care and attention

16   that you have given to this, and so I appreciate all of the

17   ways in which I felt respected and the latitudes that you

18   have granted to me.  I also understand the restrictions that

19   are there and I accept that.  And so I am ready to move on

20   with my life.

21        THE COURT:  Well, you know, obviously you do have

22   one last chance after I talk but I'll respond to that right

23   now.  That's what I think of.  I deal with the past and I

24   turn it into the future.  That's really what I do.  You got

25   accountability for what has happened.  Society doesn't work

```
 1    if we have no accountability.  So I do that.

 2              As soon as I've done it, it's really up to the

 3    guy -- it's usually a guy, sometimes it's a woman, do you

 4    make yourself a better man or you just get bitter about it

 5    and let it ruin the rest of your life?  And this is that

 6    point.  And it always pleases me when I think somebody is

 7    going to take this point and move up instead of this point

 8    and move down because I can't do much about that.  So I

 9    appreciate your sentiment and I tend to believe it.  I think

10    you probably will and I think you'll be fine, and I certainly

11    hope so.

12              With that said, are you ready for sentencing?

13              And the -- I have reviewed -- this should be on

14    here but it's not.  I've reviewed the Presentence Report.

15    I've reviewed the Advisory Sentencing Guidelines.

16              Mrs. Webb thinks it is on there.

17              No.  No, no, no, no.

18              And I've reviewed what I believe is 18 U.S.C.

19    3553(a).  Is that right?

20              MR. NAVARRO:  Correct, your Honor.

21              THE COURT:  Isn't that good?

22              I reviewed and considered all of those things.

23    They've produced an advisory guideline range of -- this

24    also isn't there.  Can somebody fill me in on that, the

25    advisory range, the guideline range?
```

```
 1              MR. NAVARRO:  Yes, your Honor.

 2              MS. CORBETT:  I believe it's 70 to 87, your Honor.

 3              THE COURT:  70 to 87 months.  Okay.

 4         And I have considered the recommendations of the

 5    Probation Office and the -- and of the parties.

 6         70 to 80.  What I'm looking at is 60 months, which

 7    must be the mandatory minimum, is it?

 8              MR. NAVARRO:  Correct, your Honor.

 9              MS. CORBETT:  Yes, your Honor.

10              THE COURT:  Okay.

11         All right.  This -- I will say this.  This case,

12    because I'm going to have another one pretty soon, this one

13    doesn't really raise the mandatory minimum issue.  It could

14    have but it doesn't so in a sense I'm glad.  Actually I don't

15    think he gave anything up because in the first place it's --

16    mandatory minimums jack up the guidelines.

17         You don't have to understand this.  I'm sort of

18    explaining for the record.

19         So you have to go up from the mandatory minimum

20    when you're dealing with guideline considerations. When

21    you're considering whether the mandatory minimums are

22    facially invalid -- I'm not prepared to say that yet until

23    I've seen more permutation.  So the way I approach that

24    question is if the sentence is consistent with what I would

25    imposed without it, then I don't think -- I don't expect the
```

1    Ninth Circuit is going to accept it until some judge says I
2    would have -- would have gone below the mandatory minimum
3    without reference to the guidelines. I'm not prepared to say
4    that in this case. I probably would not have. And so I
5    think it would have to be facially invalid. And I think
6    probably the law is going to be -- if not facially invalid
7    but in some kinds of cases it's still -- they are not going
8    to be upheld. They --
9              You seem to understand these things.
10             We used to have the prison guidelines and they
11   would set the average. I have not objected to base offense
12   levels. They were jacked up that -- because Congress has a
13   right to say the average should be higher than you guys think
14   it is. And I -- with the base offense level, say, they've
15   tried to do that.
16             Mandatory minimums are different because then they
17   say that you must ignore the totality of the circumstances on
18   the down side every time. I don't think they have the power
19   to say that but I do think that we will find it is not
20   facially invalid that the Court is going to have to defend
21   why in the totality of the circumstances this mandatory
22   minimum is manifested justice.
23             I don't face that issue here. I think I would give
24   him the five years anyway, and that's what I'm going to give
25   him. So I think that's -- that should settle all of that.

```
 1              With that said, the -- going forward with the
 2    Sentence, it is the Judgment of the Court that the Defendant
 3    Jeffrey Devore is hereby committed on Count 1 of the
 4    Indictment to the custody of the Bureau of Prisons to be
 5    imprisoned for a term of 60 months.
 6              Upon release from imprisonment, he should be placed
 7    on supervised release for his lifetime on the terms and
 8    conditions set forth in the Probation Office's recommendation
 9    which is incorporated by reference and will be repeated so
10    you'll have it to read in the court's final Order.  I just
11    don't like to read it all at this stage.  Except that in
12    Paragraph 6, the -- if I am pronouncing this correctly -- the
13    word plethysmograph shall be omitted and paragraphs --
14    paragraph 11 shall also be omitted and the following
15    paragraph shall be renumbered.  Beyond that I think that's
16    the entire sentence.
17              Oh, I see the rest of the stuff and I think I've
18    got it right.  I think I do.
19              So is there anything else?
20              MS. CORBETT:  No, your Honor.
21              THE COURT:  Thank you.
22              Anything, Mr. Navarro?
23              MR. NAVARRO:  I believe there is one, Condition
24    No. 2, about the drug testing condition.  It didn't seem to
25    be appropriate in this case.  And I looked at the PSR --
```

```
 1                THE COURT:  Does the government object?
 2                I have no reason to think that is appropriate.
 3                Does the government object to that thing deleted?
 4                MS. CORBETT:  I assume, your Honor, that the Court
 5      is making the finding that the defendant does not pose a risk
 6      of substance abuse?
 7                THE COURT:  I see no past to indicate that he would
 8      be a risk so I would easily make that finding.
 9                MS. CORBETT:  Thank you, your Honor.
10                THE COURT:  Okay.
11                Anything else?  If not then we will be in recess.
12                MR. NAVARRO:  We would ask --
13                THE COURT:  I have said -- I think I've said this
14      for the record that -- sorry -- that supervised release in
15      your circumstance, there is no reason to have it that I can
16      see imposed -- impede your ability to lead a normal life
17      beyond those things that the law says that we have to be at
18      least careful, the potential for something that could happen,
19      along the lines we have had.  But otherwise to destroy your
20      future life over it, it doesn't make any sense.  And I think
21      the drug condition for that purpose, it does impose on your
22      life and I don't think it's necessary.
23                Anything else?  If not --
24                MR. NAVARRO:  We would ask for a California
25      recommendation.
```

```
1          THE COURT:  I don't think I'm going to do that.

2          MR. NAVARRO:  Very well.

3          THE COURT:  It -- I'm sorry.  I'll tell you why

4  because it's -- you're entitled to know.  The California

5  recommendation is hard.  It isn't always followed but it's

6  harder for the prison system because they have to tell me why

7  they didn't follow it, which isn't so bad, but we have --

8  starting at a range of people, we have single mothers,

9  they've got to be in California.  We have people with young

10 kids, they've got to be in California.  We have people with

11 other circumstances that have to be in California.  And the

12 truth is you can't get all of your recommendations followed

13 with those people.  So when you run into essentially single

14 people, the -- and I don't know that you are single.  You may

15 have a partner or you may have other things, but I think

16 absent some true showing of minor needs, I probably wouldn't

17 do it; okay?

18          If there's nothing else, then we'll be in recess.

19          MS. CORBETT:  Thank you, your Honor.

20          (Proceedings concluded at 11:30 a.m.)

21                    - - - -

22

23

24

25
```

1  C E R T I F I C A T E
2
3
4
5
6         I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT
7  TRANSCRIPTION FROM THE STENOGRAPHIC RECORD OF THESE
8  PROCEEDINGS.
9
10
11
12
13
14  *Sandra Becerra*
15  SANDRA L. BECERRA, CSR 10024
16  CONTRACT COURT REPORTER
17
18
19
20
21  DATED: 12/22/14
22
23
24
25